# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

OWASSO KIDS FOR CHRIST       )
and JENNIFER RHAMES,        )
                                    )
        **Plaintiffs,**       )
                                    )
v.                                   )     **Case No. 11-CV-0653-CVE-PJC**
                                    )
OWASSO PUBLIC SCHOOLS,      )
                                    )
        **Defendant.**       )

## OPINION AND ORDER

Now before the Court are Defendant Owasso Public Schools' Motion to Dismiss and Brief in Support (Dkt. # 23) and Plaintiffs' Motion for Preliminary Injunction (Dkt. ##18, 20). Defendant Owassa Public Schools argues that plaintiff Owasso Kids for Christ (OKFC) is not a "person" capable of bringing suit under 42 U.S.C. § 1983, and that plaintiff Jennifer Rhames lacks standing to assert any claim against the Owasso Public Schools. Plaintiffs ask the Court to enter a preliminary injunction enjoining defendant from denying plaintiff access to certain speech fora at Northeast Elementary in Owasso, Oklahoma (the School).

## I.

Defendant Independent School District No. 11 of Tulsa County, Oklahoma, is commonly known as Owasso Public Schools (the District). Kids for Christ USA, Inc. is a non-profit entity incorporated in the State of Oklahoma, and OKFC is an unincorporated entity associated with Kids for Christ USA, Inc. OKFC has a federal tax identification number and states that it intends to file an application with the Internal Revenue Service for tax exempt status under § 501(c)(3) of the Internal Revenue Code. Dkt. # 16, at 4. OKFC states that it is a "Christian organization that desires

to share its religious views with students and parents at District schools." Id.  OFKC holds weekly meetings at the School and approximately 60 to 65 students attend each meeting. Id. at 8.  Students are required to return a permission slip signed by a parent before they are permitted to attend a meeting. Id. at 4.  OKFC was founded by Rhames and two other women, and Rhames leads meeting and supervises events and activities sponsored by OKFC. Id. at 5.  Rhames practices the Christian faith and states that she desires to share her views with students at the School.  Id.

Plaintiffs allege that the District allows community members and organizations to distribute flyers through a take-home program and also permits the posting of signs and announcements on a bulletin board near the School entrance. Id. at 7.  Some organizations may also post signs on School property and set up tables at School's annual open house to distribute information.  Rhames states that she "desires such communicative opportunities for the same reason other community members desire to have their information made publicly available–to promote [OKFC] activities and facilitate voluntary student/parent involvement in the activities." Id. at 6.  The District initially permitted OKFC to distribute flyers and permission slips to students through the take-home program and OKFC could make announcements over the School's public address system.  OKFC has submitted evidence that community organizations outside of the School are permitted to distribute literature and flyers through the take-home flyer program, and these groups include the YMCA, the Boy Scouts of America, the Young Rembrandts Afterschool Drawing Class, the Children's Miracle Network, the Owasso Chamber of Commerce, the Rotary Club of Owasso, the Super Science Camp, various sports teams, and community theater.  Dkt. # 18-5.

Plaintiffs claim that in April 2011 the District began to deny them access to certain means of communication within the School.  Plaintiffs requested permission to distribute a flyer promoting

an OKFC event at which a Christian martial arts team, the Combat Team, would perform a karate demonstration.  Id. at 8.  The proposed flyer recited the Combat Team's motto "One Dream, One Vision, Reaching the World for Christ," and the flyer was submitted to the District for review.  The School's principal, Janell Trimble, conferred with the District Superintendent, Clark Ogilvie, Ph.D., and Trimble advised OKFC that Dr. Ogilvie would not permit the flyer to be distributed because of the phrase "Reaching the World for Christ."  Id.  Plaintiffs state that they offered to remove the phrase from the flyer, but Dr. Ogilvie would not still not allow them to distribute the flyer.  In the summer of 2011, plaintiffs state that Dr. Ogilvie denied them permission to distribute any flyers, post signs, or make announcements on the public address system because OKFC is a religious organization. Id. at 9.  He allegedly denied OKFC's request for student members to distribute flyers before and after school.  Id.  Plaintiffs also claim that Dr. Ogilvie discouraged them from publicizing OKFC through media outside of the school.  Id. at 10.

At the beginning of the 2011-2012 school year, OKFC requested permission to distribute a flyer announcing its weekly meetings, and Dr. Ogilvie initially approved the request.  Id.  Plaintiffs claim that Dr. Ogilvie conferred with the District's attorney and subsequently withdrew his approval.  Id.  On September 7, 2011, plaintiffs' counsel sent a letter to the District requesting the same access to means of communication as other community organizations and alleging that the District was violating their First Amendment rights.  Dkt. # 18-10, at 2.  Plaintiffs believed that the District was relying upon a written policy concerning the distribution of written materials as the basis for denying their requests.  District Policy 1.05(F)(3) stated that "[n]o literature will be distributed that contains primarily religious, objectionable, or political overtones which may be beneficial to any particular group or business at the expense of others."  Dkt. # 29-4, at 1.  The

District responded through its attorney on October 5, 2011, and stated that Policy 1.05 applied to the distribution of written materials by District personnel only. The letter also states that:

> The members of OKFC will not be allowed to place posters in the hallways or have School officials make announcements over the School's PA system. The allowing of such activities to impressionable elementary students during the regular school day and while school is in session would certainly raise the issue as to endorsement of religion by the School District. In fact, it is difficult to see how an elementary student could discern that OKFC is not endorsed by the School District when such activities on behalf of the OKFC would be occurring by the School District to a captive elementary student audience during the regular school day.

Dkt. # 18-11, at

On October 24, 2011, OKFC filed this lawsuit alleging, inter alia, that the District's refusal to allow it access to means of communication open to other members of the community violated its rights under the Free Speech Clause of the First Amendment. Dkt. # 1, at 12. OKFC was the only plaintiff named in the complaint. The District filed a motion to dismiss arguing that OKFC is not a proper party. OKFC filed an amended complaint (Dkt. # 16) adding Rhames as a plaintiff, and the District filed a motion to dismiss the amended complaint (Dkt. # 18). On January 10, 2012, Dr. Ogilvie issued a memorandum to all elementary school principals in the District concerning a revised procedure for the distribution of materials by outside organizations:

A. <u>Distribution of Written Materials and Information to Students from Outside Organizations and Individuals</u>.

The District will not permit the distribution of written information, flyers, and similarly printed materials directly to students from organizations (whether for-profit or non-profit) and individuals, through a backpack flyer program or otherwise during the school day. This prohibition shall not apply to the following:

1. District recognized Parent-Teacher Organizations;

2. District sponsored student organizations; and

3. District sponsored programs/activities approved by the Superintendent.

Dkt. # 29-1, at 1. The revised policy does not authorize all outside organizations to set up informational tables at open house events, but it requires each site principal to hold at least one Information Night at which any outside organization, regardless of its political, religious, or philosophical beliefs, may distribute information. Id. at 2. Outside organizations may also post information on a community bulletin board and place written materials on a literature table regardless of the religious content of the material. Id. On January 17, 2012, the District's Board of Education voted to rescind Policy 1.05(F). Dkt. # 33-1.

Plaintiffs request a preliminary injunction allowing OKFC and Rhames to use certain means of communication provided by the School to other groups to announce OKFC activities and to distribute information about OKFC. Dr. Ogilvie has submitted an affidavit stating that OKFC is authorized to use the bulletin board and community literature table at the School. Dkt. # 29-2, at 3. He states that the backpack flyer program was intended to be a more limited communicative forum that could be utilized only by groups with a long-standing relationship with the District or that donate proceeds from the advertised activity to the District. Id. Rhames disputes Dr. Ogilvie's statements and claims that OKFC has not been permitted to post written material on the bulletin board or to leave written material on the community literature table. Dkt. # 36-1, at 2. She also states that OKFC has donated school supplies, clothing, toys, and other items worth approximately $500 for needy students at the request of Trimble. Id. at 2-3. Trimble also asked OKFC to sponsor the annual Father-Daughter Dance, and OKFC agreed to sponsor the event. Rhames states that OKFC will not be permitted to advertise the event because OKFC is not permitted to post signs or distribute written materials at the School. Id. at 4.

**II.**

The District asserts that Rhames lacks standing to bring suit and her claims should be dismissed under Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, Rhames bears the burden of proving that jurisdiction is proper. See Southway v. Cent. Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003). A court lacking jurisdiction "cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs, Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, the District has facially attacked the sufficiency of the amended complaint's allegations concerning Rhames' standing to bring suit. In analyzing such motions to dismiss, the Court must presume all of the allegations contained in the complaint to be true. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002); Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995). This is the same standard of review applied to motions arising under Fed. R. Civ. P. 12(b)(6). See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).

The District also asserts that OKFC has failed to state a claim upon which relief can be granted, and it asks the Court to dismiss plaintiff's claims under Rule 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint

provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to claimant. Twombly, 550 U.S. at 555; Alvarado., 493 F.3d at 1215; Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. Of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

The District argues that unincorporated associations, such as OKFC, are not persons capable of bringing suit under § 1983, and that OKFC should be dismissed as a party. The District also claims that Rhames lacks standing to bring suit under Article III of the United States Constitution, because she has not suffered an injury separate and apart from OKFC.

**A.**

OKFC alleges that the District violated its rights under the First Amendment, and there is no dispute that the First Amendment applies to state governmental entities by incorporation through the Due Process Clause of the Fourteenth Amendment. See 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n.1 (1996); School Dist. of Abington Township, Pennsylvania v. Schempp, 374 U.S. 203, 215 (1963). The Fourteenth Amendment does not create a private right of action for constitutional violations, but an aggrieved party may bring suit for constitutional violations against state actors under § 1983. Smith v. Michigan Dep't of Corrections, 765 F. Supp. 2d 973, 981 (E.D. Mich. 2011); Robinson v. Board of Regents of University of Colorado, 390 F. Supp. 2d 1011, 1017 (D. Colo. 2005). A claim under § 1983 may be brought by any "citizen of the United States or other person . . . ." 42 U.S.C. § 1983.

OKFC states that it is a "community-led Bible club that holds weekly, before-class meetings at the School" and it is affiliated with a national organization, Kids for Christ USA, Inc. Dkt. # 16, at 4. It has its own tax identification number and is seeking § 501(c)(3) status under the Internal Revenue Code, but it is not incorporated or organized under the laws of any state. Id. The Tenth Circuit has held that an unincorporated association is not a "person" capable of bringing suit under § 1983. Lippoldt v. Cole, 468 F.3d 1204, 1214-16 (10th Cir. 2006). In reaching this conclusion, the Tenth Circuit considered the language of § 1983, Supreme Court decisions interpreting § 1983, the legislative history, the general understanding of personhood when § 1983 was enacted in 1871, and the Dictionary Act of 1871. OKFC argues that it is fundamentally different than the unincorporated association at issue in Lippoldt, and the Court should consider OKFC's individual characteristics when determining if it is a "person" within the meaning of § 1983. Dkt. # 35, at 5.

8

However, Lippoldt does not distinguish between types of unincorporated associations and the plain holding of the case is that all unincorporated associations lack the capacity to bring suit under § 1983.

OKFC states that it has filed an application for corporate status through the Oklahoma Secretary of State, and that its application is currently pending. Dkt. # 35, at 5. This does not show that OKFC is currently an entity qualifying as a "person" under § 1983. If OKFC's application for corporate status is granted, it may seek leave to amend to substitute the new corporate entity as the proper plaintiff. OKFC argues that Lippoldt was wrongly decided and the Tenth Circuit is the only United States Court of Appeals to reach this conclusion. Id. at 5-6. It also asks to preserve this argument for review should the case be appealed to the Tenth Circuit Court of Appeals. Id. at 6 n.4. The Court finds that Lippoldt is binding Tenth Circuit precedent that is squarely on point, and this Court is bound to follow it. United States v. Spedalieri, 910 F.2d 707, 709 n.2. (10th Cir. 1990) ("A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits."). However, the Court notes that OKFC has challenged the validity of Lippoldt in the event of an appeal. Based on the allegations of the amended complaint, it is clear that OKFC is an unincorporated association incapable of bringing suit under § 1983, and it should be dismissed as a party.

**B.**

The District argues that Rhames lacks standing to bring any claim alleged in the amended complaint because she does not allege that she personally suffered any injury caused by the District's alleged denial of OKFC's First Amendment rights. Rhames responds that this argument

was rejected in <u>Lippoldt</u>, and that she is an appropriate plaintiff to bring the constitutional claims alleged in the amended complaint.

Article III of the United States Constitution limits federal courts to the adjudication of "cases or controversies." U.S. CONST. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." <u>Tandy v. City of Wichita</u>, 380 F.3d 1277, 1283 (10th Cir. 2004); <u>see</u> <u>also</u> <u>Allen v. Wright</u>, 468 U.S. 737, 750-51 (1984). The Supreme Court has recognized three elements for standing under Article III:

> First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992). The standing requirement ensures that "the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 472 (1982). The primary focus for any analysis of standing under Article III "is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury." <u>Morgan v. McCotter</u>, 365 F.3d 882, 888 (10th Cir. 2004). The Court must determine if the plaintiff has standing "as of the time the action is brought." <u>Nova Health Systems v. Gandy</u>, 416 F.3d 1149, 1154-55 (10th Cir. 2005). The party invoking the

jurisdiction of a federal court has the burden to establish Article III standing. New England Health Care Employees Pension Fund v. Woodruff, 512 F.3d 1283, 1288 (10th Cir. 2008).

Based on the Court's finding that OKFC is not a "person" capable of bring suit under § 1983, the Court finds that Rhames may rely on actions taken on behalf of OKFC to establish her standing to bring suit. The Court has determined for the purpose of this case that OKFC is not a person under § 1983, but this does not mean that the members or participants in OKFC may not be considered persons capable of bringing suit under § 1983. In Lippoldt, the Tenth Circuit found that volunteers for an unincorporated association had standing to challenge the denial of parade permits requested by the organization, even though the organization itself was not a "person" for the purpose of bringing a § 1983 claim. Lippoldt, 468 F.3d at 1216-17. The volunteers had suffered an injury from the denial of the permits and a favorable decision on the constitutional claims would redress their injury. Id. at 1217. The District argues that Rhames is not actually a "member" of OKFC, and she could not have suffered an injury from the alleged denial of OKFC's First Amendment rights. Dkt. # 23, at 11. However, Lippoldt does not condition a person's standing on membership, and volunteers for an unincorporated association had standing to bring claims for injury to the organization.[1] Lippoldt, 468 F.3d at 1217. The Court also rejects the District's argument that Rhames is asserting claims based on third party standing. For the purpose of § 1983, OKFC is not a "person" capable of bring suit, and it is unclear how Rhames could be relying on third-party standing if the third-party is not an entity capable of bringing suit in its own right. Thus, Rhames

---

[1]     The District cites Lippoldt for the proposition that membership is required to assert claims for injury suffered by an unincorporated association, but it fails to note that volunteering for an organization was sufficient to establish a person's standing. Dkt. # 23, at 11.

may establish that she has standing to assert § 1983 claims against the District based on her actions taken on behalf of OKFC.

The Court finds that Rhames has standing to bring § 1983 claims against the District. Rhames states that she and two other women founded OKFC and she leads meetings and activities sponsored by the group. Dkt. # 16, at 5. She practices the Christian faith and she desires to share her beliefs with students who receive permission to attend OKFC's meetings. Id. She claims that the District is effectively censoring her religious speech by denying her access to certain means of communication, but the District allows other citizens and community organizations to announce meetings and distribute information at the School. Id. at 5-6. The District's stated reason for preventing Rhames from distributing flyers, posting signs, or making announcements is that OKFC is a religious organization. Id. at 9. Rhames also claims that the District's superintendent discourages Rhames and other members of OKFC from using any means of communication to publicize its activities in the School because it would "stir up trouble." Id. at 10. The amended complaint provides many specific examples of instances in which Rhames was prohibited from accessing speech fora available to other members of the community, and the allegations of the amended complaint are sufficient to support an inference that Rhames was denied the same speech rights as other members of the community because she wished to speak on religious matters. She has clearly stated sufficient facts to show that she has suffered a concrete and particularized injury, and that she continues to be denied the same speech rights as others. The District has allegedly caused her injury and a ruling in Rhames' favor on her constitutional claims would redress the injury. The District overstates Rhames's burden to establish Article III standing and it is clear that she has standing in her own right to bring claims against the District.

# IV.

Rhames seeks a preliminary injunction against the District enjoining the prohibition of her use of several means of communication at the School to announce OKFC activities and distribute information about OKFC. Dkt. # 18. The District responds that it has not violated Rhames' First Amendment rights by denying OKFC access to certain nonpublic speech fora, and that it has provided reasonable alternative means for OKFC to distribute information and announce its activites. Dkt. # 29.

A preliminary injunction is an "extraordinary equitable remedy designed to 'preserve the relative positions of the parties until a trial on the merits can be held.'" Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1225 (10th Cir. 2009) (quoting Univ. Of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). To be entitled to a preliminary injunction, the moving party must establish the following:

> (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest.

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1066 (10th Cir. 2001) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) ("It is frequently is observed that a preliminary injunction is an extraordinary remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."). First, the Court must determine whether the plaintiff seeks a "specifically disfavored" type of preliminary injunction. See Schrier v. Univ. of Colo., 427 F.3d 1253, 1259 (10th Cir. 2005); O

Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en

banc).  If an injunction fits into one of these three categories, it must be "more closely scrutinized

to assure that the exigencies of the case support the granting of a remedy that is extraordinary even

in the normal course."  O Centro, 389 F.3d at 975.  The three types of disfavored preliminary

injunctions are: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary

injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover

at the conclusion of a full trial on the merits."  Id.

The Court finds that granting Rhames's request for a preliminary injunction would award

her essentially all of the relief sought in the amended complaint, and Rhames' request for a

preliminary injunction should be given closer scrutiny.  If the Court were to issue a preliminary

injunction, Rhames would be authorized to use some or all of the speech fora to distribute

information about OKFC, and this is the primary relief sought in the amended complaint.  Rhames

does request nominal damages, but she does not seek retrospective money damages or punitive

damages. Dkt. # 16, at 23-24.  Rhames does seek attorney fees under 42 U.S.C. § 1988, but a party's

right to attorney fees is a post-judgment matter.  See Fed. R. Civ. P. 54(d)(2).  Thus, if the Court

were to enter an injunction as requested by Rhames, she would receive essentially all of the relief

sought in the amended complaint.[2]  Under this heightened standard, Rhames must make "a strong

showing both with regard to the likelihood of success on the merits and with regard to the balance

---

[2]     The joint status report states that neither party has demanded a jury trial; however, the
District has not answered the amended complaint and its time to make a jury demand has not
passed.  If neither party demands a jury, this may be an appropriate case to consolidate the
preliminary injunction hearing with a trial on the merits. Fed. R. Civ. P. 65(a)(2).

of harms." Awad v. Ziriax, ___ F.3d ___, 2012 WL 50636, *10 (10th Cir. Jan 10, 2012). This does not affect Rhames' burden as to irreparable injury or the public interest. Id.

The District argues that Rhames' motion is moot based on the adoption of a revised policy for distribution of information by outside organizations and the Board of Education's decision to rescind former Policy 1.05(F). A motion for preliminary injunction becomes moot when "the act sought to be enjoined has occurred." Transeuro Amertrans Worldwide Moving & Relocations Ltd. v. Conoco, Inc., 95 Fed. Appx. 288, 290 (10th Cir. Apr. 15, 2004);[3] see also Securities and Exchange Commission v. Pearson, 426 F.3d 1339 (10th Cir. 1970) ( "[W]here the likelihood of any continuing menace to the public does not in reason exist, it has been recognized that the extraordinary measure of a preliminary injunction is not justified"). Dr. Ogilvie has issued a new policy governing access to the flyer distribution program, bulletin board, open house events, and for the posting of signs on School property, and the new policy is facially viewpoint-neutral as to religion. Dkt. # 29-1. The Court finds that this does not automatically dispose of Rhames' free speech claims. The memorandum does not define "District sponsored student organization" or "District sponsored programs/activities," and Rhames has a legitimate concern that the District will use the new policy to engage in improper viewpoint discrimination. Dkt. # 36, at 8. At a minimum, there is a fact issue as to whether the District is applying its new policy in a viewpoint-neutral manner, and Rhames is not barred from asserting an as-applied First Amendment challenge simply because the District has adopted a new policy concerning the distribution of materials by outside organizations.

---

[3]  Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

Likelihood of Success on the Merits

Rhames argues that she is likely to prevail on her free speech and due process claims, and that she can show a substantial likelihood of success on the merits. Dkt. # 19, at 13. The District responds that the backpack flyer distribution program is a nonpublic forum for speech, and it may limit the use of this forum by groups who are not directly affiliated with the District or who do not have a long-standing relationship with the District. Dkt. # 29, at 16-20. Rhames also argues that she should also be permitted to use the public address system and the bulletin board, to set up a table at open house events, and to post signs on School property, but the parties' briefing shows that the backpack flyer distribution program is the primary speech forum at issue.

The Court will focus on the merits of Rhames' free speech claim under the First Amendment in considering whether she has shown a substantial likelihood of success on the merits. The parties disagree as to the designation of the speech fora at issue. The Supreme Court has identified three types of fora for speech: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998). Rhames claims that the backpack flyer distribution program, bulletin board, public address system, and the posting of signs are designated public fora, while the District asks the Court to classify these as nonpublic fora subject to significantly more control by the District. A designated public forum "consists of public property which the state has opened for use by the public as a place for expressive activity." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983). The government is not required to provide such a forum but, once the government opens a forum for expressive activity, it is treated in the same manner as a traditional public forum under the First Amendment. Summum v. Callaghan, 130 F.3d 906, 914 (10th Cir. 1997). The government may

impose reasonable time, place, and manner restrictions on speech activities. <u>Pleasant Grove City, Utah v. Summum</u>, 555 U.S. 460, 469 (2009). However, content-based restrictions on speech in a designated public forum are subject to strict scrutiny, and such restrictions must be narrowly tailored to achieve a compelling government interest. <u>Id.</u> Restrictions based on the viewpoint of the speaker are prohibited. <u>Id.</u> A nonpublic forum is not by "tradition or designation a forum for public communication." <u>Perry</u>, 460 U.S. at 46. Restrictions on speech in a nonpublic forum are not subject to strict scrutiny, and the government must only show that such restrictions are reasonable and viewpoint neutral. <u>United States v. Kokinda</u>, 497 U.S. 720, 730 (1990); <u>see</u> <u>also</u> <u>Perry</u>, U.S. 460 at 46 ("In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view").

The District argues that public schools are public property that are not open to the general public and the School should be treated as a nonpublic forum. Dkt. # 29, at 14-15. However, this argument overlooks the fact that the School has opened its doors to student groups such as OKFC, and it allows these groups to use certain means of communication within the School. While a public school is not per se a traditional public forum, different aspects of a public school may be considered as a designated public forum or a nonpublic forum depending on whether "school authorities have 'by policy or by practice' opened those facilities 'for indiscriminate use by the general public . . . .'" <u>Hazelwood School Dist. v. Kuhlmeier</u>, 484 U.S. 260, 267 (1988) (quoting <u>Perry</u>, 460 U.S. at 47). The Court must consider the specific qualities of each speech forum to which Rhames seeks access and determine if that particular forum is a designated public forum or nonpublic forum. <u>See</u> <u>Axson-Flynn v. Johnson</u>, 356 F.3d 1277, 1285 (10th Cir. 2004).

Rhames seeks a preliminary injunction, in effort to allow her to distribute flyers and permission slips in the same manner as other community organizations. Rhames has presented evidence that at the time this case was filed the District permitted community organizations unaffiliated with the School to distribute flyers through the backpack flyer distribution program. These groups included the YMCA, the Boy Scouts of America, the Young Rembrandts Afterschool Drawing Class, the Children's Miracle Network, the Owasso Chamber of Commerce, the Rotary Club of Owasso, the Super Science Camp, various sports teams, and community theater. Dkt. # 18-5. Based on the diversity of groups represented, it is possible that the backpack flyer distribution program was by policy or practice open to community organizations and members of the general public and should be treated as a designated public forum. See Doe v. South Iron R-1 School Dist., 498 F.3d 878 (9th Cir. 2007) (when a public school or other government agency creates a forum generally open to students or to the public but denies access to those who would engage in protected religious speech, it must "satisfy the standard of review appropriate to content-based exclusions" by showing that the exclusion "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end"). The Court is not making a final determination on this issue, but there is at least sufficient evidence to warrant further inquiry into the forum status of the backpack flyer distribution program. There is also evidence suggesting that Rhames was not permitted to send out flyers announcing OKFC events solely because OKFC is a religious organization and, regardless of the forum type, this would constitute impermissible viewpoint discrimination. See Dkt. # 29-4, at 1 (letter from District's attorney to OKFC stating that OKFC would not be permitted to post flyers or make announcements because of potential Establishment Clause entanglement).

The evidence submitted by the parties is insufficient for the Court to determine whether the public address system, bulletin board, open house events, and the posting of signs on school property constitute designated public fora or nonpublic fora. Rhames' motion for preliminary injunction and brief in support are primarily focused on Rhames' access to the backpack flyer distribution program, and there is considerably less evidence about these other speech fora. According to the District, Rhames is allowed to post material on the bulletin board to announce OKFC activities and events, and this aspect of her claims is moot. Trimble and Dr. Ogilvie state that OKFC is authorized to use the bulletin board and place materials on a nearby literature table. Dkt. # 29-2, at 3; Dkt. # 29-3, at 3. However, Rhames has submitted an affidavit stating that she has not been permitted to post written material on the bulletin board or community literature table on behalf of OKFC, and there is a factual dispute on this issue. See Dkt. # 36-1, at 2. As to the posting of signs or flyers on school property, the only evidence submitted by Rhames is a photograph of a sign posted on school property by the Boy Scouts of America. This is not sufficient to show that the District generally allows the posting of signs by members of the general public or community organizations on school property. The Court also notes that the District has directed elementary school principals to host an Information Night at each elementary school once per school year, and it appears that OKFC would be permitted to set up a table and distribute information at that event. The creation of this alternate speech forum could moot Rhames' claim concerning the denial of OKFC's right to set up a table at open house events. Rhames has also not shown that school open house events or the public address system necessarily qualify as designated public fora or that she was denied access to the speech fora because of the religious nature of her speech. The Court reserves factual findings on these issues,

because the record is insufficient for the Court to determine Rhames' likelihood of success on the merits as to these speech fora.

Irreparable Harm

Rhames argues that loss of her First Amendment rights, even for a short period of time, constitutes irreparable harm. Irreparable harm is injury that is "certain, great, actual 'and not theoretical.'" Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)). "[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Heideman, 348 F.3d at 1189 (quoting Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2001)) (emphasis in original). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347 , 373 (1976). The Tenth Circuit has noted, in the context of a First Amendment case, that "when an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001). The District argues that it has left open alternate fora for speech, such as a bulletin board and community literature table, and that Rhames will not be irreparably harmed if her request for a preliminary injunction is denied. However, the Court does not find that the availability of potential alternate fora is sufficient to overcome the irreparable injury caused by the alleged denial of Rhames' constitutional rights. Rhames is clearly seeking to avoid further interference with exercise of her First Amendment right of free speech and, if proven, this would consitute an irreparable injury sufficient to support the issuance of a preliminary injunction.

## Balance of Interests

Rhames argues that allowing her to engage in speech activities protected by the First Amendment outweighs any harm that will be suffered by the District if an injunction is issued. The District respond that other methods of speech are available to Rhames and she will not suffer any substantial harm if she is not permitted to convey her message in her preferred manner. Dkt. # 29, at 25. However, the District does not have a significant interest in enforcing a policy that violates any person's constitutional rights. See Awad, ___ F.3d ___, 2012 WL 50636, at *15; Chamber of Commerce of United States v. Edmondson, 594 F.3d 742, 771 (10th Cir. 2010). If Rhames can establish likelihood of success on the merits on her free speech claim, the balance of interests will favor the issuance of a preliminary injunction to cure the constitutional violation.

## Public Interest

Lastly, Rhames has the burden to show that granting her request for a preliminary injunction would not adversely affect the public's interests. The public interest strongly favors allowing citizens to validly exercise their First Amendment rights, and it would be in the public's interest to prevent the District from enforcing an unconstitutional policy. Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221, 1237 (10th Cir. 2005); Utah Licensed Beverage Ass'n, 256 F.3d at 1076. As with the balance of harms, the public's interest will not be harmed if Rhames can establish likelihood of success on her free speech claim.

## Conclusion

Based on the preliminary injunction briefing and the evidence submitted by the parties, the Court finds that Rhames' request for a preliminary injunction warrants further inquiry and it may be necessary to have an evidentiary hearing. The Court is cognizant that the issuance of a

preliminary injunction is a fact-intensive process and an evidentiary hearing should ordinarily be held before an injunction is entered. Thus, the parties will be directed to file a status report concerning the need for an evidentiary hearing. The parties are also directed to confer to determine if they can reach an agreement as to any of Rhames' claims. The Court could also set this matter for an immediate settlement conference before a magistrate judge if the parties believed that this would assist in resolving their dispute.

**IT IS THEREFORE ORDERED** that Defendant Owasso Public Schools' Motion to Dismiss and Brief in Support (Dkt. # 23) is **granted in part** and **denied in part:** OKFC's claims are dismissed without prejudice, but the motion to dismiss is denied as to Rhames. OKFC is hereby terminated as a party to this case.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report concerning the need for an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction (Dkt. ## 18, 20) no later than **March 1, 2012**.

**DATED** this 23rd day of February, 2012.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT